**In the Matter of B.J.E., C.J.E., K.J.E., and T.J.E., Alleged Dependent and Neglected Children.**

**No. 15757.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 17, 1988.

Decided April 27, 1988.

Janice Godtland, Asst. Atty. Gen., Roger A. Tellinghuisen, Atty. Gen., on brief, Pierre, for appellee, State of S.D.

George E. Grassby of Whiting, Hagg & Hagg, Rapid City, for appellant, D.J.E.

MILLER, Justice.

This is an appeal in which D.J.E. (Mother) appeals the termination of her parental rights over her four children (B.J.E., C.J.E., K.J.E., and T.J.E.). Father's parental rights were previously terminated. He is not a party to this appeal. We hold that the trial court substantially complied with the provisions of the Indian Child Welfare Act (ICWA), and therefore it had jurisdiction to act in this case.

Mother has raised six issues on appeal (among them the adequacy of expert testimony, admissibility of certain exhibits, sufficiency of the evidence to support the allegations of the petition and whether termination of parental rights was the least restrictive alternative). We have thoroughly and carefully considered each issue and conclude that all but one are totally without merit. Thus, those issues are affirmed on the basis of settled law, no abuse of discretion and clearly sufficient evidence to support the findings.

In the remaining issue, Mother challenges the jurisdiction of the trial court over the child T.J.E. (who was born subsequent to the filing of the dependency and neglect petition) claiming that the mandatory notice requirements of the ICWA were not met. This presents us with a new, novel, and serious issue.

## FACTS

Mother and the children are Indians and presumably enrolled in the Rosebud Sioux Tribe (Tribe). The record is devoid of any evidence that they are enrolled members of Tribe; however, that issue is not argued or disputed.

At the time of the filing of the dependency and neglect petition, T.J.E. was not yet born nor was the Department of Social Services (DSS) aware of her pregnancy. Therefore, the petition named only the three older children.

It is clear from the record that the appropriate notice [1] required by the ICWA (25 U.S.C.A. § 1912(a)),[2] was given to Tribe.

---

1. The notice specifically stated in part "... you are herewith notified that the ultimate action may conclude in foster care or termination of parental rights involving the above-named child[ren]. Under the Indian Child Welfare Act, you have ten (10) days from receipt of this notification to request that jurisdiction of this matter be transferred to your Court, or to request an extension of time to investigate this matter further....."

2. 25 U.S.C.A. § 1912(a) provides:

In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the secretary in

This notice was dated June 17, 1985. On July 1, 1985, Tribe acknowledged receipt of the notice and also filed a motion for continuance and a request to produce and examine. On July 24, a letter was written to the circuit court judge from a Rosebud Tribal Court Judge indicating that Tribe declined intervention but reserved the right to intervene at a later date. The tribe was also given notice of the temporary custody proceeding.

In a report to the circuit court dated January 6, 1986, DSS requested that the unborn child be added to the petition as DSS felt that the well-being of the unborn child was jeopardized by Mother's drinking. In a motion and order for custody during pendency of the proceedings, dated February 3, 1986, the "Unborn Child" is specifically referred to.

A notice of the adjudicatory hearing was filed with the circuit court on May 13, 1986. T.J.E. (who was born on February 17, 1986) was specifically named as one of the children in that notice. A certified mail return receipt, date of delivery 5/13/86, addressed to Tribe, was filed with the circuit court.

On June 24, 1986, Tribe's Indian Child Welfare Advocate (Advocate) sent a letter to the circuit judge stating that their office would work with Mother until the next circuit court hearing scheduled for July 24, 1986. Advocate indicated that she planned to attend that hearing. Advocate also indicated that if Mother complied with the stipulations of the case plan that they had set up for her, the tribal court would then decide whether to transfer the case back to it.

An amended petition for dependency and neglect was filed on July 17, 1986, wherein T.J.E. is once again specifically named. There is no return receipt of notice to Tribe for this amended petition.

A notice of a final dispositional hearing was filed on January 26, 1987. T.J.E. is again specifically named. A notation on the bottom of this notice indicates that both the Rosebud and Oglala Sioux Tribes were sent copies of the notice, which is verified by certified mail return receipts in the record. There is no date of delivery on the second return receipt.

On February 13, 1987, the Rosebud Sioux Tribal Court sent a letter to the circuit judge advising that Tribe

respectfully declines to transfer jurisdiction in regards to the above-named minor children [J.E. children]. However we would like to recommend the following to your Court.

1. That the four guidelines of the Indian Child Welfare Act be followed in regards to the placement of the children.

2. That we be sent a pre-adoptive homestudy of the potential adoptive family for our files.[3]

## DECISION

Recently, in *Matter of N.A.H.*, 418 N.W. 2d 310, 311 (S.D.1988), we reaffirmed that "the provisions of the ICWA must be complied with in Indian child custody proceedings." *Citing In re K.A.B.E.*, 325 N.W.2d 840 (S.D.1982); *People in Interest of C.R.M.*, 307 N.W.2d 131 (S.D.1981). In *N.A.H.*, we reversed an order terminating parental rights and remanded the case for a new hearing as proper notice had not been given to two Indian tribes. In *N.A.H.*, the Oglala Tribe had been sent a notice but such notice had not informed it of the right to intervene in the case. The record also did not indicate that notice had been sent by registered mail with return receipt requested to the Oglala Tribe concerning the dispositional hearing. Finally, the Crow Tribe, which was also involved,

---

like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: *Provided,* That the parent or Indian custodian or

the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding.

3. At no time has Tribe asserted that the circuit court in any manner failed to comply with the provisions of the ICWA.

did not receive any notice of the dispositional hearing.

In *N.A.H.,* we also provided that minimally, "notice must conform to the standards found in 25 U.S.C. § 1912(a). Better practice would be to follow the Bureau of Indians Affairs guidelines set forth at 44 Fed.Reg. 67588 (1979)." *N.A.H., supra* at 312, *citing Matter of S.Z.,* 325 N.W.2d 53 (S.D.1982) (footnote 1). One of these guidelines requires the name of the child to be given to tribe in the notice.

Here, although Tribe was not sent a copy of the amended petition naming T.J.E., we find no violation of 25 U.S.C. § 1912(a) or the guidelines. It is clear from the above facts that T.J.E. was named in many documents filed with the court and sent to Tribe by certified mail. Thus, Tribe had *actual notice* [4] that the ongoing petition involved the newborn, T.J.E. and there was substantial compliance with the ICWA and the guidelines so as to give the trial court jurisdiction over T.J.E.

Affirmed.

All the Justices concur.

**4.** Further, Tribe's Advocate worked extensively with Mother after T.J.E.'s birth and was involved in many of the circuit court proceedings dealing with the J.E. family.