In the Matter of the DEPENDENCY AND NEGLECT OF A.L., M.L., and M.L., and Concerning G.L. and V.L., Parents.

No. 16444.

Supreme Court of South Dakota.

Argued April 24, 1989.

Decided June 14, 1989.

Mark L. Bratt, Asst. Atty. Gen., Roger A. Tellinghuisen, Atty. Gen., on the brief, Pierre, for appellee State.

Timothy L. Thomas of Morrill, Brown & Thomas, Rapid City, for V.L., Father.

Jane Doyle of Doyle & Doyle, Rapid City, for G.L., Mother.

Jean M. Cline of Finch, Viken, Viken & Pechota, Rapid City, for A.L., M.L., and M.L., Children.

MORGAN, Justice.

V.L. (Father) and G.L. (Mother), collectively parents, appeal jointly from an order denying Cheyenne River Sioux Tribal Court's (Tribe's) petition to transfer jurisdiction in the matter of the dependency and neglect of their three children. We affirm.

The order appealed from arises out of a dependency and neglect action commenced in state court by the South Dakota Department of Social Services (DSS or State) on March 16, 1987, and involves three children. A.L., born March 18, 1978, is the biological daughter of Mother and adopted daughter of Father. M.L., born February 9, 1980, is the biological son of parents. M.L., born August 17, 1984, is the biological daughter of parents. The children will be collectively referred to as "children."

While Mother is Caucasian, Father and children are enrolled members of the Tribe.

A Notice to Tribe of Indian Child Custody Proceeding filed May 12, 1987, advised Tribe that it had ten days from receipt to request that jurisdiction be transferred, or to request an extension of time to investigate the matter further. A certified mail receipt shows delivery to Tribe on May 13, 1987. Subsequent notices of hearing dates were also sent by certified mail. An order adjudicating the children as dependent and neglected was entered on August 17, 1987. An additional order dated December 24, 1987, gave DSS continued legal custody. At this point, there has been no dispositional hearing.

On April 1, 1988, Joe Lends His Horse, Indian Child Welfare Officer for Tribe, indicated to the Pennington County Deputy State's Attorney, by telephone, that Tribe was willing to intervene in this action. The request to intervene was forwarded to the trial court, which ultimately held a transfer hearing on May 26, 1988, and continued on June 9, 1988. A Notice to Tribe dated April 25, 1988, informed Tribe of the transfer hearing. A registered mail receipt shows delivery to Tribe on May 4, 1988. Joe Lends His Horse appeared on behalf of Tribe at the May 26, 1988, hearing and orally requested the trial court to transfer the proceeding to Tribe. Neither Father nor Mother opposed the transfer.

The state's attorney and attorney for children opposed the transfer. At the hearing, they submitted exhibits and witnesses in support of their objection to transfer. Ultimately, the trial court determined that good cause to the contrary existed to deny Tribe's petition to transfer jurisdiction. The court's findings of fact and conclusions of law stated in pertinent part that Tribe's request for transfer is untimely. Further, that (1) A.L. was not Indian, (2) the children have little contact or affiliation with Tribe, (3) the effect of a transfer would be strongest on A.L., (4) the home the Tribe proposes is not in the best interests of the children, and (5) it would be detrimental to "split the children up."

Parents' issue on appeal is whether the trial court erred in finding good cause to deny Tribe's petition for transfer of jurisdiction pursuant to the Indian Child Welfare Act (ICWA). In so doing, they take issue with the above findings of fact and conclusions of law.

We first define our scope of review. A trial court's findings of fact cannot be set aside unless they are clearly erroneous and we are, after a review of all of the evidence, left with a definite and firm conviction that a mistake has been made. *Matter of J.L.H.*, 316 N.W.2d 650 (S.D.1982); SDCL 15–26A–10. A trial court's conclusions of law may be reviewed and set aside on appeal only when the trial court has erred as a matter of law. *Temple v. Temple*, 365 N.W.2d 561 (S.D.1985). We will uphold the judgment of the trial court if it is right for any reason.

ICWA, codified at 25 U.S.C. §§ 1901 et seq. (1978), was passed by Congress because

it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture[.]

25 U.S.C. § 1902; *Claymore v. Serr*, 405 N.W.2d 650 (S.D.1987). The two specific purposes of the act: (1) to protect the best interests of Indian children, and (2) to promote the stability of Indian tribes, is "based on the assumption that protection of the Indian child's relationship to the tribe is in the child's best interests." *Chester Cty. Dept. of Social S. v. Coleman*, 296 S.C. 355, 357, 372 S.E.2d 912, 914 (1988).

An Indian child is defined as: "[A]ny unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" 25 U.S.C. § 1903(4).

The children involved in this proceeding are all enrolled members of Tribe. Although the trial court found A.L. to be the biological child of Caucasian parents, and the record clearly supports that finding, giving deference to the ICWA provision "every State ... shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe," 25 U.S.C. § 1911(d); we hold that ICWA applies to all three children and Tribe has concurrent jurisdiction in these proceedings.

When concurrent jurisdiction between the State and Tribe exists, 25 U.S.C. 1911(b) provides for the transfer of child custody proceedings as follows:

In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, that such transfer shall be subject to declination by the tribal court of such tribe.

The issue in this case is whether the trial court's determination that good cause to the contrary existed to deny a transfer of proceedings to the tribal court, under the above-quoted provision, was error. "Good cause to the contrary" is not defined in the ICWA. The legislative history of the ICWA states that the term was designed to provide state courts with flexibility in determining the disposition of a placement proceeding involving an Indian child. S.Rep. No. 597, 95th Cong., 1st Sess. 17 (1977).

Relying on our decision in *Matter of N.A.H.*, 418 N.W.2d 310 (S.D.1988), parents contend that the trial court must adhere to the Department of the Interior Bureau of Indian Affairs Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67584–67595 (Nov. 26, 1979) (hereinafter BIA guidelines) in determining what constitutes "good cause to the contrary."

They argue further that, under these guidelines, the trial court erred in finding Tribe's request for transfer untimely. In *N.A.H.*, the issue was whether state courts must conform to the notice requirements of 25 U.S.C. § 1912(a) (registered mail return receipt requested). We said: "At a minimum, notice must conform to the standards found in 25 U.S.C. § 1912(a). Better practice would be to follow the [BIA guidelines]." 418 N.W.2d at 311.

State contends that regardless of our holding in *N.A.H.*, the BIA guidelines are merely "guidelines" and "do not have binding legislative effect." *Matter of S.D.*, 402 N.W.2d 346, 350 (S.D.1987). Further, that the Tribe's request to transfer these proceedings was untimely even under the BIA guidelines, therefore, good cause exists to deny transfer.

We agree with State that the BIA guidelines are not binding. They are interpretative rather than legislative in nature. The guidelines themselves state: "Courts will take what this Department has to say into account in such instances, but they are free to act contrary to what the Department has said if they are convinced that the Department's guidelines are not required by the statute itself." 44 Fed.Reg. at 67584. Clearly, this court has the primary responsibility of interpreting the ICWA. However, in interpreting the ICWA, these "administrative interpretations of statutory terms are given important but not controlling significance." *Batterton v. Francis*, 432 U.S. 416, 424–25, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448, 456 (1977).

■ Because we find the issue of timeliness dispositive, we only address that aspect of the trial court's "good cause" determination. The BIA guidelines provide in pertinent part the following criteria for determining when good cause not to transfer may exist:

Good cause *not to* transfer the proceeding may exist if any of the following circumstances exists:

(i) The proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing.

44 Fed.Reg. at 67591. The timeliness of a petition language is "designed to encourage the prompt exercise of the right to petition for transfer in order to avoid unnecessary delays." *Id.* However, whether a petition is timely must be made on a case-by-case basis. Flexibility is required by the trial court in applying this "good cause" criteria. Keeping this in mind, we review the record to determine whether substantial evidence supports the trial court's finding that good cause exists to deny transfer.

Parents argue that Tribe's request to transfer was timely based on the fact that Tribe was not properly notified of the proceedings until May 4, 1988. Furthermore, at the May 26, 1988, hearing, it requested transfer. DSS argues that Tribe had actual notice of the dependency proceedings in May 1987, therefore, the transfer motion a year later is untimely.

In *Matter of B.J.E.*, 422 N.W.2d 597 (S.D.1988), we addressed the issue of notice to the tribe under ICWA. In that case we said:

Here, although Tribe was not sent a copy of the amended petition naming [the child], we find no violation of 25 U.S.C. § 1912(a) or the guidelines. It is clear from the above facts that [the child] was named in many documents filed with the court and sent to Tribe by certified mail. Thus, Tribe had *actual notice* that the ongoing petition involved the [child] and there was substantial compliance with the ICWA[.] (Emphasis in original.)

422 N.W.2d at 600. The same rationale applies to the facts of this case. Tribe received notice of the dependency proceeding as early as May 1987. Even though Tribe did not receive registered notice, they had actual notice.

We next determine whether Tribe's request for transfer was timely. This issue has arisen in other jurisdictions. We find two cases particularly helpful. *In re Robert T.*, 200 Cal.App.3d 657, 246 Cal.Rptr. 168 (1988), a California Appeals Court determined that Tribe had been given notice

of all proceedings since six months after the child was first placed in foster care. Further, that Tribe had not indicated its interest in the proceedings until after it was notified of a termination hearing and an aunt had expressed interest in custody. That court held that this sixteen-month delay between the permanency planning hearing and Tribe's first request to intervene was sufficient to establish "good cause" to deny transfer.

In *Matter of Wayne R.N.*, 107 N.M. 341, 757 P.2d 1333 (1988), parents requested transfer to Tribal Court on the morning of the hearing on a petition for termination of parental rights. The trial court held the request was not timely. On appeal, the New Mexico Court of Appeals agreed, holding that the request to transfer was made almost six months after being served notice of the proceedings and that this provided "good cause" not to transfer.

In this case, the dependency petition was filed in March 1987. Tribe was notified on May 13, 1987. The children were adjudicated dependent in August 1987. Tribe has indicated only a passing interest by orally petitioning for transfer on May 26, 1988, a year after they received notice. Tribe has filed nothing below, nor participated in this appeal. On these facts, we cannot say that the trial court's finding of untimeliness was clearly erroneous. Therefore, we affirm as to this issue and do not find it necessary to discuss parents' other issues.

Affirmed.

HENDERSON, J., concurs.

WUEST, C.J., and MILLER, J., concur specially.

SABERS, J., concurs in part and concurs specially in part.

WUEST, Chief Justice (specially concurring).

I concur with the majority opinion on the issues of notice and timeliness. However, in my opinion, it is unnecessary to hold that the State Court is bound by the records of the tribe which show that a Caucasian child is an Indian. Therefore, I decline to express any opinion on that issue.

MILLER, Justice (specially concurring).

Although I generally agree with the majority decision, I disagree with that part of the holding "that ICWA applies to all three children and Tribe has concurrent jurisdiction in these proceedings."

The majority correctly notes that the record "clearly supports" the trial court's finding that A.L. is a biological child of Caucasian parents. Further facts may be instructive. None of the parties dispute that A.L. is Caucasian, nor that this blue-eyed blond-haired child was born out of wedlock to Caucasian parents. The hospital records support that both natural parents were Caucasian. Even the adoptive father in his petition for adoption to the Kansas Court specifically alleges that the natural father of A.L. is one L.H. of Douglas, Wyoming, admittedly a Caucasian. The Kansas court in its decree of adoption held that the allegations of the petition were true. (Isn't that order entitled to some type of full faith and credit too?)

True, the tribal enrollment records of A.L. indicate that she is ⅜ Indian. Under normal circumstances we must (and quite appropriately so) give full faith and credit to tribal acts, records and proceedings. However, in this case I suggest it is not only unwise but inappropriate because the enrollment information regarding A.L. is in direct contravention of the Cheyenne River Sioux Tribal Constitution and By-laws. Under the Tribal Constitution and By-laws, membership in the Tribe is limited to persons who have ¼ or more degree of Cheyenne River Sioux Indian blood. Obviously, A.L. does not meet that requirement. Presumably, once this matter is appropriately addressed to the Tribal Court or Tribal Council, A.L.'s enrollment status will be rescinded.

We need not ignore the obvious realities and give full faith and credit to the tribal enrollment records which were clearly issued by mistake or based upon fraudulent misrepresentations to it by others. The enrollment of A.L. is so fundamentally flawed that we need not give it recognition

or deference. *See Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Kiowa Tribe v. Lewis*, 777 F.2d 587 (10th Cir. 1985), and *Kickapoo Tribe v. Rader*, 822 F.2d 1493 (10th Cir.1987). *See also Cole v. Cunningham*, 133 U.S. 107, 10 S.Ct. 269, 33 L.Ed. 538 (1890), and *Rodda v. Rodda*, 185 Or. 140, 200 P.2d 616 (1948).

SABERS, Justice (concurring in part and concurring specially in part).

I concur in part and join Justice MIL-LER's special concurrence in part.