In the Matter of the WELFARE
OF the CHILD OF T.T.B.
and G.W., Parents.

Nos. A05–1615, A05–1631.

Court of Appeals of Minnesota.

March 21, 2006.

Jacqueline M. Beaulieu, Minneapolis, MN, for appellant T.T.B.

Leonardo Castro, Chief Fourth District Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, MN, for appellant G.W.

Thomas J. Vollbrecht, Guy–Uriel E. Charles (pro hac vice), Faegre & Benson, L.L.P., Minneapolis, MN, for appellant Yankton Sioux Tribe.

Amy Klobuchar, Hennepin County Attorney, and Mary M. Lynch, Assistant County Attorney, Minneapolis, MN, for respondent Hennepin County Human Services and Public Health Department.

Jonathan G. Steinberg, Minneapolis, MN, for respondent guardian ad litem.

Considered and decided by LANSING, Presiding Judge; KALITOWSKI, Judge; and HALBROOKS, Judge.

## OPINION

LANSING, Judge.

In these consolidated appeals from the district court's permanent-placement order for an Indian child, the child's father and tribe challenge the district court's subject matter and personal jurisdiction and its denial of their motion to transfer jurisdiction to the tribal court. The father also appeals the child's placement in a non-Indian, nonrelative home and the denial of an intervention motion by a prospective placement. We affirm the district court's exercise of jurisdiction but conclude that the absence of good cause for transfer of jurisdiction to the tribal court requires reversal.

## FACTS

·GW and TTB are the parents of XTB, who was born in Rhode Island on November 15, 2003. GW is a member of the Yankton Sioux Tribe (the tribe), and TTB is a member of another tribe. XTB is eligible to be a member of both tribes.

Four days after XTB's birth, the Rhode Island Department of Child, Youth, and Families took him into custody under a forty-eight-hour emergency hold. The department took these actions based on information that TTB, who was a minor at the time of XTB's birth, had previously been diagnosed with depression and post-traumatic stress syndrome, had provided inconsistent information about her reason for being in Rhode Island, and might have an open juvenile-protection case in Minnesota. The department contacted Hennepin County (the county) the same day and confirmed that the county had an open termination-of-parental-rights case for TTB's older child. The county was unaware of TTB's pregnancy and was intending to request a default judgment on the pending termination-of-parental-rights case for TTB's older child.

Based on the information received from the department, the county filed a petition for an emergency hold, and Hennepin County District Court issued an ex parte emergency hold on XTB. Although TTB opposed the county's efforts to obtain custody of XTB, the dispute was apparently resolved in the Rhode Island courts, which "recognized Minnesota's jurisdiction in this matter and ... returned [XTB] to the child welfare authorities in Minnesota." Although this determination is not disputed, the file does not contain the operative order in the Rhode Island proceeding.

The county initially added XTB to TTB's ongoing termination-of-parental-rights proceeding, but the district court dismissed XTB from the petition. On December 31, 2003, the county filed a separate petition to terminate parental rights or transfer legal custody of XTB. Neither GW nor TTB objected to the transfer of legal custody; they indicated that they preferred XTB be placed with AGM, TTB's foster mother, in Rhode Island. Other possible placements included BW, GW's mother, and SG, the paternal grandmother of TTB's older child.

In February 2004 TTB voluntarily terminated her parental rights to her older child. The tribe intervened in XTB's proceeding in April 2004. AGM and her husband, NM, also filed a motion to intervene as participants in the proceeding. The district court denied their motion, ruling that it was premature and that permitting AGM and NM to intervene as participants would require intervention by the other potential placements.

Three months later, the district court issued a scheduling order, which required that all pretrial motions be filed by July 22, 2004. On July 16, 2004, the county amended its petition to allege that both parents wanted to transfer custody of XTB and that neither parent participated in their respective case plans or set up a visitation schedule. The amended petition also indicated that GW was a noncustodial parent and that he had chemical-health issues.

On July 22, 2004, GW and TTB filed a joint petition requesting that the district court transfer jurisdiction to the tribal court. GW also filed a motion to dismiss under Minn. R. Juv. Prot. P. 15.04. In the pretrial hearing held on August 12, 2004, the district court denied GW's motion to dismiss because it concluded that the petition established a prima facie case. It then continued the transfer-of-jurisdiction issue to allow the tribe to provide a written statement on whether it would accept the transfer. On September 24, 2004, the tribe filed an independent motion to transfer jurisdiction to the tribal court. The

district court, however, denied the motion to transfer jurisdiction on the grounds that the motions were filed at an advanced stage in the proceeding and that the 400–mile distance between the tribal court and the district court would cause undue hardship for the parties and participants.

In October 2004 the parties stipulated to the facts and record supporting transfer of legal custody and indicated their preference that custody of XTB be transferred to AGM. As part of this stipulation, the parties included a Rhode Island Interstate Compact Home Assessment, which determines the suitability of a proposed placement. This assessment denied XTB's placement with AGM, based in part on AGM's involvement with the questionable circumstances that led to TTB giving birth in Rhode Island instead of Minnesota.

In February 2005 the district court issued an order transferring legal custody to SG. The court concluded that the child's best interests would be served by placement with SG because of her willingness to provide for XTB and because TTB's older child lived in her home. It also concluded that BW had not demonstrated sufficient interest in either the child or the proceedings and that AGM was not a valid placement option based on the conclusion of the Rhode Island home assessment.

GW filed a motion for a new trial, and the district court denied his motion. GW and the tribe both appeal from the order denying transfer of jurisdiction to the tribal court, and GW appeals from the district court's denial of his motion to dismiss, its denial of AGM's motion to intervene as a participant, and its order transferring custody to SG. We consolidated GW's and the tribe's appeals for purposes of review.

### ISSUES

I. Does the district court have subject matter jurisdiction to transfer legal custody?

II. Does the district court have personal jurisdiction over an Indian child who was born in Rhode Island and had not been in Minnesota?

III. Is a petition to transfer jurisdiction of a child-protection case to a tribal court filed at an advanced stage in the proceeding when the petition was filed six days after the amended child-protection petition and before the deadline for pretrial motions?

### ANALYSIS

#### I

 Subject matter jurisdiction is "a court's power to hear and determine cases of the general class or category to which the proceedings in question belong." *Bode v. Minn. Dep't of Natural Res.*, 594 N.W.2d 257, 259 (Minn.App.1999) (quotation omitted), *aff'd*, 612 N.W.2d 862 (Minn. 2000). A juvenile court in Minnesota has "original and exclusive jurisdiction in proceedings concerning any child who is alleged to be in need of protection or services." Minn.Stat. § 260C.101, subd. 1 (2004). Because the issue of subject matter jurisdiction addresses the court's authority to hear a particular class of actions, the issue may be raised at any time, including for the first time on appeal. Minn. R. Civ. P. 12.08(c). We review challenges to subject matter jurisdiction de novo. *Johnson v. Murray*, 648 N.W.2d 664, 670 (Minn.2002).

GW and the tribe assert that the district court lacked subject matter jurisdiction because it did not make adequate findings that XTB was in need of protection or services. This argument, however, mistakenly combines the issue of subject matter jurisdiction with a determination of the underlying elements of the action. *See Arbaugh v. Y & H Corp.*, —— U.S. ——, ——, ——, 126 S.Ct. 1235, 1238, 1242, 163 L.Ed.2d 1097, ——, —— (2006) (explain-

ing that subject matter jurisdiction should not be confused with challenge to essential ingredients of claim). The county need not prove its prima facie case to establish subject matter jurisdiction, but must simply set forth sufficient allegations that a child is in need of protection or services to demonstrate that the case is within the class of cases the court has authority to hear.

█ The record in this case includes the required allegations. Both the initial and amended petitions allege that XTB is in need of protection or services. The petitions also indicate that, because neither parent intends to exercise custody over XTB, the child has no place to live. A child who has no place to live is a child in need of protection or services. *See* Minn. Stat. § 260C.007, subd. 6(3), (6), (2004) (providing child is in need of protection or services when child lacks necessary care or parent wishes to be relieved of custody). The district court therefore had subject matter jurisdiction.

This determination does not exclude the existence of subject matter jurisdiction in the Rhode Island courts at the time of XTB's birth. Rhode Island and Minnesota had concurrent jurisdiction in this case, and Rhode Island ceded jurisdiction to Minnesota. *See Id.* § 518D.206(a) (2004) (providing that, in cases involving concurrent jurisdiction of states, one state may stay its jurisdiction on determination that other state is more convenient forum).

**II**

█ GW and the tribe assert that the district court lacks personal jurisdiction over XTB because he was born in Rhode Island, was never a resident of Minnesota, and was not in Minnesota before this action began. The determination of whether personal jurisdiction exists is a question of law subject to de novo review. *Patterson v. Wu Family Corp.,* 608 N.W.2d 863, 866

(Minn.2000). A party waives the defense of personal jurisdiction if the issue is not raised as a defense, made by motion, or included in a responsive pleading. Minn. R. Civ. P. 12.08(a); *see also Comm'r of Natural Res. v. Nicollet County Pub. Water/Wetlands Hearings Unit,* 633 N.W.2d 25, 31 (Minn.App.2001), *review denied* (Minn. Nov. 13, 2001).

█ The issue of personal jurisdiction has been waived. Neither GW nor the tribe included the defense in a responsive pleading or raised it as a defense. GW filed a motion to dismiss under rule 15.04, which provides for dismissal for lack of subject matter jurisdiction, personal jurisdiction, or the failure to establish a prima facie case. Minn. R. Juv. Prot. P. 15.04. The motion papers, however, do not identify a specific basis for dismissal. The transcript from the motion hearing does not contain any reference to personal jurisdiction. GW and the tribe argued, instead, that the petition failed to set forth a prima facie case. Because personal jurisdiction was not raised in the district court, the issue is waived.

**III**

A transfer-of-legal-custody proceeding is a child-custody proceeding under the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901–1963 (2000), and the Minnesota Indian Family Preservation Act, Minn. Stat. §§ 260.751–.835 (2004). When the court does not terminate parental rights, the parents retain their visitation rights and the power to request modification of custody, and the transfer-of-legal-custody proceeding qualifies as a foster-care placement proceeding. *See* 25 U.S.C. § 1903(1)(i) (defining "foster care placement" as "any action removing an Indian child from its parent or Indian custodian for temporary placement in ... the home of a guardian [where the parent] cannot

have the child returned upon demand, but where parental rights have not been terminated"); *see also* Minn.Stat. § 260C.201, subd. 1(a)(2)(ii) (2004) (referring to transfer of legal custody as foster-care placement).

■ In a proceeding for the foster-care placement of an Indian child who does not reside on the reservation of the child's tribe, the district court, on the petition of either parent or the Indian child's tribe, shall transfer the proceeding to the jurisdiction of the tribe unless either parent objects or good cause to the contrary exists. 25 U.S.C. § 1911(b). The presumptive transfer absent good cause or parental objection reflects the congressional intent in the ICWA to ensure that, as a general principle, Indian tribes would have authority to determine custody issues involving Indian children. *See Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 52, 109 S.Ct. 1597, 1610, 104 L.Ed.2d 29 (1989). Although good cause is not statutorily defined, the Bureau of Indian Affairs (BIA) guidelines provide direction for interpreting the ICWA. *In re Welfare of S.N.R.*, 617 N.W.2d 77, 81 (Minn.App. 2000), *review denied* (Minn. Nov. 15, 2000).

Under the BIA guidelines, the party opposing transfer has the burden of establishing good cause. BIA Guidelines, 44 Fed.Reg. 67,584, 67,591 (Nov. 26, 1979). Good cause exists if the "proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing." *Id.* at 67,591. The guidelines note that a last-minute transfer may have a disruptive effect on the proceeding and that long periods of impermanent placement may be harmful to a child's well-being. *Id.* at 67,590–92.

■ Good cause also exists when the "evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses." *Id.* at 67,591; *People ex rel. J.L.P.*, 870 P.2d 1252, 1257 (Colo.Ct.App.1994). A party seeking to prevent transfer on the basis of undue hardship must present evidence of the hardship. *J.L.P.*, 870 P.2d at 1257. The distance between the district court and the tribal court is not alone sufficient to establish undue hardship because, under this reasoning, "almost every case involving a child not residing on a reservation could be denied transfer." *In re Guardianship of J.C.D.*, 686 N.W.2d 647, 650 (S.D.2004).

■ No published Minnesota case specifies the applicable standard of review that applies to a motion to transfer an ICWA case to a tribal court or analyzes the good-cause requirement for denial of a motion to transfer. The participants in this appeal agree that abuse of discretion is the appropriate standard for reviewing a decision on a motion to transfer. This standard is consistent with the BIA guidelines, which also indicate that transfer of jurisdiction is a discretionary decision. BIA Guidelines, 44 Fed.Reg. at 67,591 (discussing court's discretion in applying criteria for transfer). Other jurisdictions have generally recognized that the decision on whether to transfer an ICWA case to a tribal court is reviewed under an abuse-of-discretion standard. *See, e.g., People ex rel. A.T.W.S.*, 899 P.2d 223, 225 (Colo.Ct. App.1994) ("The determination of good cause is within the discretion of the juvenile court."); *In re D.M.*, 685 N.W.2d 768, 770 (S.D.2004) ("Denial of a motion to transfer jurisdiction under [ICWA] is reviewed under the abuse of discretion standard."). We conclude that an abuse-of-discretion standard is appropriate when considering a district court's decision to deny transfer of jurisdiction to a tribal court.

■ Both parents and the tribe petitioned the court to transfer jurisdiction to

the tribal court, and neither parent objected to the transfer. The court, however, concluded that good cause existed to deny the transfer because the tribal court is approximately 400 miles away and the petitions were made at an advanced stage in the proceeding. Neither reason supports a discretionary decision to deny transfer.

First, the distance between Hennepin County and the tribal court is insufficient on its own to establish undue hardship. No participant stated that they would be unable to attend a hearing in the tribal court because of the distance or indicated how the distance would adversely affect an ability to participate. Without evidence of undue hardship, distance alone cannot defeat a transfer of jurisdiction to a tribal court.

Second, the court did not receive the petitions at an advanced stage in the proceedings. The initial petition to transfer jurisdiction was filed on July 22. This filing occurred only six days after the filing of the amended petition for transfer of legal custody. Significantly, the petition for transfer of jurisdiction was filed by the deadline for filing pretrial motions. When the district court considered the motion for transfer of jurisdiction at the August 12 pretrial hearing, it did not indicate that the motion was untimely. The court only requested that the tribe provide a written statement of its willingness to accept jurisdiction. The tribe provided this statement on September 24. Because the petition was filed shortly after the amended petition for transfer of legal custody, complied with the scheduling order of the district court, and occurred before any permanency trial, the petition for transfer of jurisdiction was not filed at an advanced stage in the proceedings, and good cause does not exist to deny the transfer of jurisdiction to the tribal court.

The remaining two issues relate to the district court's determination of the participants in the proceeding and the preferences to be applied in the ultimate placement decision. Both of these determinations occurred after the district court's denial of the petition to transfer jurisdiction. Because we conclude that the law requires transfer of jurisdiction to the tribal court, these determinations extended beyond the district court's right to adjudicate and are therefore invalid.

## DECISION

We affirm the district court's exercise of subject matter jurisdiction to consider a petition to transfer legal custody of a child alleged to be in need of protection or services, and we conclude that the issue of personal jurisdiction was waived. We reverse the district court's denial of the motion to transfer jurisdiction to the tribal court and remand for transfer of jurisdiction to the Yankton Sioux Tribal Court.

**Affirmed in part, reversed in part, and remanded.**