#27864, #27999-r-DG
**2017 S.D. 30**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

The People of the State of South Dakota in the
interest of A.O., V.O., and C.O., Children, and Concerning
V.S.O., Respondent, C.G., Indian Custodian and
OGLALA SIOUX TRIBE, Intervener.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE ROBERT MANDEL
Judge

\* \* \* \*

CONOR DUFFY of
Pennington County Public
  Defender's Office
Rapid City, South Dakota                    Attorneys for appellant Mother
                                            V.S.O.


JOSEPH N. THRONSON
Special Assistant Attorney General
Department of Social Services
Pierre, South Dakota                        Attorneys for appellee State of
                                            South Dakota.


\* \* \* \*

CONSIDERED ON BRIEFS
ON APRIL 24, 2017
OPINION FILED 05/24/17

#27864, #27999

GILBERTSON, Chief Justice

[¶1.]      Law enforcement removed A.O., V.O., and C.O. (the Children) from the home of their mother, V.S.O. (Mother), after discovering methamphetamine and drug paraphernalia in the home.  More than one year after the State initiated abuse-and-neglect proceedings against Mother, who is an enrolled member of the Oglala Sioux Tribe (the Tribe), the circuit court denied motions to transfer the case to the jurisdiction of the Tribe.  Mother argues that the circuit court erred by denying the motions without holding an evidentiary hearing.  We reverse and remand.

## Facts and Procedural History

[¶2.]      On November 23, 2014, Rapid City Police responded to a call reporting that A.O. had fallen and sustained a neck injury at Mother's residence.[1]  While checking on the child, who was in Mother's bedroom, officers noticed drug paraphernalia, including a pipe.  The pipe tested positive for methamphetamine.

---

1.    Mother was not the legal custodian of the Children at the time.  The State of Nebraska previously took the Children into custody in January 2012.  In May 2013, the Tribe requested the proceedings be transferred to its jurisdiction, and Nebraska obliged.  The Tribe subsequently awarded custody to the Children's great-grandmother, C.G. (Great-Grandmother).  The Children's father's parental rights have previously been terminated.  At the time of the November 23, 2014 call, Great-Grandmother had temporarily returned the Children to Mother.  Great-Grandmother subsequently informed the South Dakota Department of Social Services that she is no longer able to care for the Children.

Mother also provided a urine sample, which tested positive for both methamphetamine and marijuana.[2]

[¶3.]    The same day, the State asked the circuit court to award temporary custody of the Children to the South Dakota Department of Social Services (the Department). The court granted the request. The Tribe was given timely notice and intervened. On December 18, 2014, the State filed a petition alleging the Children were abused or neglected. The court held an advisory hearing on December 29, during which it appointed one attorney to represent the interests of the Children and another to represent their legal guardian, Great-Grandmother. At an adjudicatory hearing on February 18, 2015, Mother and Great-Grandmother admitted to portions of the petition.

[¶4.]    The Department evaluated Mother's ability to care for the children and worked with her to develop a case plan. As part of the case plan, the Department required Mother to: (1) maintain stable housing and employment, (2) complete a chemical-dependency evaluation and follow all resulting recommendations, (3) complete family therapy, and (4) maintain sobriety and complete regular urinalyses. After review hearings on April 6, June 1, and July 27, 2015, the Department was not satisfied with Mother's progress. At the following review hearing on September 2, the Department asked the court to set a final dispositional hearing. Counsel for the Children joined the Department's request. Counsel for Mother, Great-Grandmother, and the Tribe asked the court to instead set another review

---

2.    The State subsequently charged Mother with possession of a controlled substance and paraphernalia.

hearing, arguing that a number of factors contributed to Mother's delay in meeting the goals detailed in her case plan.[3] The court agreed to set one more review hearing.

[¶5.]     The court held the fifth review hearing on November 16. The Department again asked the court to schedule a final dispositional hearing. The Department indicated that it intended to seek the termination of Mother's parental rights at such hearing. Mother's counsel objected, asserting that since the last review hearing, Mother had obtained both employment and an apartment. He also indicated that Mother had been regularly undergoing urinalyses with court services. The parties and the circuit court agreed to set an additional review hearing for December 14. However, the court also scheduled a final dispositional hearing for January 25, 2016.

[¶6.]     After the November 16, 2015 hearing but before the December 14, 2015 hearing, the Tribe submitted a motion to transfer the proceedings to its jurisdiction. The circuit court considered the motion at the December 14 review hearing. Because the case had been open for over a year, counsel for the Department and the Children objected to the motion as untimely. Counsel for Mother joined the Tribe in asking the court to set a separate hearing on the issue. The court declined to hold a separate hearing, and it denied the motions. Following a final dispositional hearing on January 25 and February 17, 2016, the court terminated Mother's parental rights.

---

3.     For example, Mother was not sentenced in the criminal proceedings until July 2015. She also asserted her progress had been slowed by an unspecified, work-related injury.

[¶7.]     Mother appeals the termination of her parental rights, raising one issue: Whether she was entitled to a hearing on the question whether good cause existed to deny the motions to transfer jurisdiction to the Tribe.

## Standard of Review

[¶8.]     "Denial of a motion to transfer jurisdiction under [the Indian Child Welfare Act] is reviewed under the abuse of discretion standard." *In re D.M.*, 2004 S.D. 90, ¶ 5, 685 N.W.2d 768, 770. "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices . . . .'" *MacKaben v. MacKaben*, 2015 S.D. 86, ¶ 9, 871 N.W.2d 617, 622 (quoting *Gartner v. Temple*, 2014 S.D. 74, ¶ 7, 855 N.W.2d 846, 850). The circuit court's "factual determinations are subject to a clearly erroneous standard." *Id.* (quoting *Gartner*, 2014 S.D. 74, ¶ 8, 855 N.W.2d at 850). Under this standard, we will not disturb the court's factual findings unless after reviewing the record, "we are left with a definite and firm conviction that [the court made] a mistake[.]" *Gartner*, 2014 S.D. 74, ¶ 8, 855 N.W.2d at 850 (quoting *Estate of Olson*, 2008 S.D. 97, ¶ 9, 757 N.W.2d 219, 222).

## Analysis and Decision

[¶9.]     There is no dispute that this case is governed by the Indian Child Welfare Act (ICWA). Under ICWA,

> [i]n any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, *in the absence of good cause to the contrary*, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe:

>*Provided*, That such transfer shall be subject to declination by the tribal court of such tribe.

25 U.S.C. § 1911(b) (2012) (emphasis added). Mother argues the circuit court erred by denying her and the Tribe's motions to transfer the proceedings to tribal court without first holding a hearing to determine whether good cause existed to deny the motions. According to Mother, the court's denial of the motions deprived her of notice of the Department's objection to the motions as well as an opportunity to be heard. The State argues that the circuit court "had sufficient evidence from which it determined that the proceedings were too far along to transfer the case to tribal court."

[¶10.]       As the language of 25 U.S.C. § 1911(b) indicates, transfer of a qualifying proceeding is generally mandatory when requested, subject only to the objection of the child's parents, the formal refusal of the tribal court, or a finding of good cause to deny the transfer. *People ex rel. M.C.*, 504 N.W.2d 598, 601 & n.2 (S.D. 1993). "The burden of establishing good cause to the contrary is on the party opposing transfer[,]" *id.* at 601, which in this case was the Department. "[A] jurisdictional hearing is required before the court can enter an order either granting *or* denying a request for the transfer of jurisdiction of Indian children to tribal custody." *Id.* (emphasis added) (quoting *In re G.L.O.C.*, 668 P.2d 235, 237 (Mont. 1983)). While good cause may exist if "[t]he proceeding [is] at an advanced stage when the petition to transfer [is] received[,]" *id.* at 600 (quoting *In re Dependency & Neglect of A.L.*, 442 N.W.2d 233, 236 (S.D. 1989)), the determination "whether a petition is timely must be made on a case-by-case basis[,]" *id.* "In deciding if 'good cause to the contrary' exists . . . , the [circuit] court should make specific

-5-

findings . . . ." *Id.* at 602 (quoting *Chester Cty. Dep't of Soc. Servs. v. Coleman*, 372 S.E.2d 912, 915 (S.C. Ct. App. 1988)).

[¶11.]     We agree that the court's denial of the request to transfer was improper. It is undisputed that the circuit court refused to hold a separate evidentiary hearing on the question of good cause. And the court's commentary on the issue during the December 14, 2015 review hearing consists only of the following[4]:

> Well, it's going to be the Court's finding that the motion to transfer is not timely and it's going to be denied in this case. I note this case is—was open last November, 2014. The [T]ribe's apparently been aware of it for more than a year. No efforts were made to get it transferred before this time, and I—my real concern is, it just is contrary to the interests of the children to start over from square one after a year has proceeded in the matter, so that motion is going to be denied.

As noted above, in determining whether the motions to transfer were timely, the court was required to consider all the particular circumstances of this case, not simply the amount of time that had passed since the proceedings first began. *See id.* at 600. Although this case was over one year old, it had not yet reached final disposition. Without knowing the Tribe's and Mother's reasons for waiting to seek transfer, the circuit court necessarily did not consider all the circumstances of this case.

[¶12.]     The court's finding that transferring jurisdiction was not in the best interest of the Children is susceptible of the same criticism. As above, the absence of specific factual findings precludes meaningful review. The Tribe intervened and

---

4.     The court did not issue written findings of fact on the issue of good cause.

has been involved in this case since nearly its beginning. The Tribe has been represented at each of Mother's review hearings. The circuit court did not identify any reason to conclude that transferring jurisdiction to the Tribe would have amounted to a "start over from square one[.]" And even if it had, the best interest of a child cannot be determined by considering solely the length of time spent in foster care. Like the timeliness issue, the question whether denying the transfer was in the best interest of the Children is one best answered after affording Mother a full opportunity to present evidence and argument.

### Conclusion

[¶13.] The circuit court was required to conduct an evidentiary hearing on the question whether good cause existed to deny Mother's and the Tribe's motions to transfer the proceedings to the Tribe's jurisdiction. The court was also required to make specific factual findings on this issue. The court failed to do so. Therefore, the court abused its discretion in denying the motions.

[¶14.] We reverse the circuit court's final dispositional order and remand with instructions for the court to hold an evidentiary hearing on the question whether good cause exists to deny the motions to transfer.

[¶15.] ZINTER, SEVERSON, WILBUR, and KERN, Justices, concur.