#28548-r-MES
**2019 S.D. 23**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

The People of the State of South Dakota in the
Interest of E.T., Child, and Concerning, A.T. and J.H.,
Respondents, OGLALA SIOUX TRIBE, Intervenor.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MATTHEW M. BROWN
Judge

* * * *

CASSIDY M. STALLEY
Lynn, Jackson, Shultz & Lebrun, P.C.
Rapid City, South Dakota                    Attorneys for child E.T. and
                                            appellant.


DANA L. HANNA
Rapid City, South Dakota                    Attorney for intervenor and
                                            appellee.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 7, 2019

OPINION FILED **04/17/19**
**CORRECTED ON 08/28/19**

#28548

SALTER, Justice

[¶1.]     This is an appeal from a final dispositional order transferring jurisdiction of an abuse and neglect proceeding to tribal court. Counsel for the child maintains the circuit court abused its discretion when it granted the motion to transfer because the court improperly refused expert-witness testimony at the transfer hearing, the proceeding was at an advanced stage, and the court erroneously determined the father's objection to the transfer was untimely. We reverse and remand for the purpose of conducting an evidentiary hearing.

## Facts and Procedural History

[¶2.]     On September 1, 2016, one day after her birth, law enforcement removed E.T. (Child) from A.T.'s (Mother) care after both Child and Mother tested positive for the presence of methamphetamine in their systems. Having reason to know Child and Mother were affiliated with the Oglala Sioux Tribe (the Tribe), the Department of Social Services (DSS) notified the Tribe of Child's removal pursuant to the provisions of the Indian Child Welfare Act (ICWA). The Tribe intervened at the initial "48-hour" emergency-custody hearing and received timely notice of all additional filings. In a September 28, 2016 petition, the State alleged that Child was abused or neglected.

[¶3.]     DSS initially placed Child into foster care. However, after Mother completed an outpatient-treatment program, DSS placed Child with Mother on an in-home safety plan on January 5, 2017. But the reunification was short-lived. Mother was arrested on January 13, 2017, for missing a urinalysis required in connection with a pending criminal case, and Child was placed back into foster care.

-1-

[¶4.]     Despite the setback, Mother continued to work with DSS. She obtained part-time employment, completed a parenting class, submitted to twice-weekly urinalysis testing and daily PBTs, and consistently participated in weekly visitation with Child. Mother also earned enough money to pay her child support arrears regarding a different child, allowing her to be freed of her work release requirement and to have her ankle monitor removed.[1] Mother was doing so well, in fact, that at an August 9, 2017 review hearing, the circuit court instructed DSS to begin working on another in-home safety plan so Child could be returned to Mother's care.

[¶5.]     Before a plan could be finalized, however, Mother was arrested on August 26, 2017. She was driving while intoxicated, struck another vehicle, and then fled the scene. The circuit court granted Mother bond on these charges, but she was taken into custody again on September 14, 2017, for a 24/7 sobriety program violation. At a review hearing held October 4, 2017, the State and Child's counsel requested the matter be set for a final dispositional hearing. The State served notice of the final dispositional hearing on the Tribe on October 6, 2017.

[¶6.]     At the outset of what was to have been the final dispositional hearing on November 27, 2017, before any argument or evidence was presented, the Tribe orally moved to transfer the abuse and neglect case to tribal court. Child's counsel

---

1.    Though the record from the unrelated child support enforcement action is not included in the record on appeal, the current record does contain references to the child support case and certain restrictions placed upon Mother. We interpret these to be conditions imposed by the court presiding over the enforcement action to obtain compliance with the child support order.

resisted the motion, arguing the transfer request came at an advanced stage of the case and was contrary to Child's best interests.

[¶7.]     The circuit court suspended the final dispositional hearing and held a transfer hearing on January 4, 2018. To support the objection to the Tribe's transfer request, Child's counsel attempted to present expert medical testimony from Child's pediatrician, Dr. David Whitney. The Tribe claimed it had insufficient notice of the substance of Dr. Whitney's expert opinions and requested an offer of proof. Child's counsel obliged and offered the following:

> Dr. Whitney is going to testify about the bond that develops between an infant and their caregiver and what happens when that bond is broken to a child physically, mentally, and emotionally.
>
> And that testimony is going to be used to establish good cause because at this point in time, the tribe waited until the day of the final dispositional hearing, which was well [over] a year after [Child] came into care. . . .
>
> The BIA guidelines specifically also state that the [c]ourt can consider exceptional circumstances. And this is an exceptional circumstance because we have a baby that was placed at birth with the people that have been her primary caregiver. They are the only family she knows. This is not a case where we have a four year old that's taken temporarily from their parents or grandparents and then is going to be returned home or we can explain to them what's happening.
>
> This is an infant who only knows [Foster Parents] and knows them as Mom and Dad. We can't explain to [Child] what's going to happen to her and she will face long-term and short-term physical and emotional effects and that's what Dr. Whitney is going to testify to.

[¶8.]    In response, the Tribe objected to the entirety of Dr. Whitney's proposed testimony,[2] arguing bonding between Child and the foster parents was not an appropriate factor to consider when determining a motion to transfer. The circuit court sustained the Tribe's objection and excluded Dr. Whitney's expert opinions. The court noted that bonding "in and of itself" did not constitute good cause to deny transfer, but it also recognized that the best interests of the child is a relevant factor to consider. The court, nevertheless, determined Dr. Whitney's testimony would be irrelevant, reasoning the testimony could be useful *only* to establish an accepted and unremarkable general proposition that a delay in seeking transfer can impact a child's best interests. The circuit court received no other testimony or exhibits. It took the motion to transfer under advisement to determine if good cause existed to deny the motion, given the Child's argument that the proceeding was at an advanced stage.

[¶9.]    After receiving post-hearing briefing from Child's counsel, the circuit court entered findings of fact and conclusions of law on February 21, 2018. The court ultimately determined the proceeding was not at an advanced stage because no argument or evidence was presented at the final dispositional hearing before the Tribe made its motion to transfer.

[¶10.]    On February 22, 2018, one day after the circuit court's findings and conclusions were entered, but before a final order was entered, J.H. (Father)

2.    Though Dr. Whitney was present at the hearing and had provided preliminary testimony about his qualifications, he did not provide testimony for the offer of proof, which was more in the nature of a proffer by Child's counsel. The parties have not alleged the form of the offer of proof is significant in this appeal.

objected to the transfer through his counsel. The circuit court entered a final order on March 1, 2018, granting the Tribe's motion to transfer. On March 20, 2018, the court entered an order denying Father's objection to the transfer because it was not in proper form[3] and because it was untimely. Child's counsel filed an application for special relief, requesting this Court to enter a stay in the matter pending appeal. We granted the application and stayed the circuit court's transfer order.

## Analysis

[¶11.] Under the ICWA, state courts and tribal courts share concurrent jurisdiction over abuse and neglect cases involving Indian children who are not domiciled on reservations or wards of a tribal court. *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36, 109 S. Ct. 1597, 1602, 104 L. Ed. 2d 29 (1989) (citing 25 U.S.C. § 1911(b)). However, this shared jurisdiction is presumptively tribal. *Id.* As such, state courts must transfer, upon motion, foster-care-placement and termination-of-parental-rights proceedings to tribal court jurisdiction unless 1) either parent objects; 2) the tribal court declines jurisdiction; or 3) good cause to the contrary exists. *Id.*

[¶12.] If a party objects to the transfer on the grounds that good cause to the contrary exists, all parties must be given the "opportunity to provide the court with views regarding whether good cause to deny transfer exists." 25 C.F.R. § 23.118. The admissibility of evidence regarding good cause is generally governed by the

---

3. Father, who was living in Arkansas, indicated to his counsel that he objected to the transfer. Counsel emailed the circuit court and the other parties, notifying them of Father's objection and informing them that Father would state his objection on the record when requested.

rules of evidence. We note, however, that the rules of evidence may be relaxed when considering the disposition of juvenile matters, which includes the transfer of jurisdiction to a tribal court. *See* SDCL 26-7A-56. "Questions of the relevance of proffered testimony are committed to the discretion of the trial court and this court will not reverse its ruling absent an abuse of discretion." *State v. Olson*, 408 N.W.2d 748, 752 (S.D. 1987). "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices[.]'" *In re A.O.*, 2017 S.D. 30, ¶ 8, 896 N.W.2d 652, 654 (*quoting MacKaben v. MacKaben*, 2015 S.D. 86, ¶ 9, 871 N.W.2d 617, 622).

[¶13.] The statutory provisions of the ICWA do not define "good cause to the contrary." Historically, the Bureau of Indian Affairs (BIA) has issued guidelines for state courts to assist in determining the existence of good cause to deny a motion to transfer. Though they were not binding upon this Court, we have recognized that these guidelines, issued in 1979 and in 2015, were "given important but not controlling significance." *In re A.L.*, 442 N.W.2d 233, 236 (S.D. 1989) (quoting *Batterton v. Francis*, 432 U.S. 416, 424–25, 97 S. Ct. 2399, 2405, 53 L. Ed. 2d 448, 456 (1977)).

[¶14.] In 2016, however, the BIA undertook formal rule-making and promulgated binding regulations which address, among other things, motions to transfer ICWA cases to tribal jurisdiction. *See* 25 C.F.R. § 23.115, *et seq.* The BIA subsequently issued its corresponding 2016 guidelines that expressly "replace the 1979 and 2015 versions of the Department's guidelines." Guidelines for Implementing the Indian Child Welfare Act, 81 Fed. Reg. 96,476 (Dec. 30, 2016).

[¶15.]     Though they do not provide a specific definition of "good cause," the 2016 regulations and guidelines effect noteworthy changes to the BIA's previous regulatory efforts in ICWA transfer determinations.  First, the 2016 regulations have the effect of law and are binding upon state courts.[4]  *See In re M.H.*, 2005 S.D. 4, ¶ 10 n. 3, 691 N.W.2d 622, 625 n. 3 (observing BIA *guidelines* are not binding because "the BIA did not promulgate their guidelines for state courts in Indian child custody proceedings as regulations").  Second, rather than listing relevant considerations for the determination of good cause to deny a motion to transfer, as the earlier guidelines had, the 2016 regulations proscribe certain enumerated considerations including, among others, "whether transfer could affect placement of the child."  *See* 25 C.F.R. § 23.118 (listing proscribed considerations for determination of good cause to deny a motion to transfer jurisdiction).

[¶16.]     With or without the 2016 regulations, though, circuit courts need the benefit of a sufficiently developed record to assist in the good cause determination.  *See A.O.*, 2017 S.D. 30, ¶ 13, 896 N.W.2d at 656; *In re M.C.*, 504 N.W.2d 598, 601 (S.D. 1993).  In both *A.O.* and *M.C.*, we held that the circuit court should have conducted an evidentiary hearing before determining the motion to transfer jurisdiction.  In the absence of a developed record, we are unable to conduct meaningful appellate review concerning the merits of the parties' claims.

---

4.     The parties have not challenged the validity of the 2016 BIA regulations. *Cf. Brackeen v. Zinke*, 338 F.Supp.3d 514, 542-544 (N.D. Tex. 2018) (declaring disputed portions of 2016 BIA regulations invalid, reasoning that the BIA lacks authority under the ICWA to issue regulations binding on the states).

[¶17.]     As it relates to this case, we conclude that the circuit court abused its discretion when it granted the Tribe's motion to transfer without hearing the testimony of the child's physician who was present in the courtroom. Relying upon the impromptu offer of proof by Child's counsel, the court determined that Dr. Whitney's testimony was categorically irrelevant. We disagree.

[¶18.]     Proffered evidence is relevant under our rules if:

(a)     It has any tendency to make a fact more or less probable than it would be without the evidence; and

(b)     The fact is of consequence in determining the action.

SDCL 19-19-401 (Rule 401).

[¶19.]     Here, Dr. Whitney was Child's pediatrician and had been for most of her young life. His testimony concerning the impact of the transfer upon Child may well have yielded relevant and admissible evidence. Separate and apart from placement or bonding concerns, it is possible that at least some of Dr. Whitney's opinions could have been relevant to broader best-interests considerations such as stability, health or the presence of extraordinary circumstances. *See In re J.L.*, 2002 S.D. 144, ¶¶ 18-19, 23, 654 N.W.2d 786, 791 (providing the best interests of the child may constitute good cause for denying a motion to transfer).

[¶20.]     We understand that the proffer relating to Dr. Whitney's proposed testimony by Child's counsel seemed to implicate opinions involving prohibited considerations such as bonding and placement. However, we do not think the proffered testimony should be viewed as exclusively involving prohibited considerations. Rather, we believe the context of the proffer and the court's ability to relax the rules of evidence suggest the need for flexibility in its assessment.

[¶21.] In this regard, there was apparently no procedural requirement noted by any party or the court that obligated Child's counsel to identify Dr. Whitney as an expert witness and disclose the substance of his opinions prior to the transfer motion hearing. For this reason, the offer of proof was requested by the Tribe's counsel to provide an idea of the proposed testimony before there was even an objection to the testimony, much less a ruling from the court. This process differs from the more common offer of proof which is sought by a party adversely impacted by a court's evidentiary ruling as a means of carefully establishing a factual record for appellate review. *See State v. Sprik*, 520 N.W.2d 595, 600 (S.D. 1994) (failure to make an offer of proof deprives an appellate court of a record for appellate review). Under the circumstances here, the court's view of the offer of proof was too narrow, particularly given the fact that the proffer also described Dr. Whitney's anticipated testimony in broader best-interests terms concerning stability, health and the harmful effects of delay—e.g., "We can't explain to [Child] what's going to happen to her and she will face long-term and short-term physical and emotional effects and that's what Dr. Whitney is going to testify to."

[¶22.] We, therefore, reverse the circuit court's order to transfer jurisdiction to tribal court and remand for further proceedings to determine the Tribe's motion for transfer anew. Because the evidentiary issue is dispositive of this intermediate appeal, it is unnecessary to address the other issues presented by Child.

[¶23.] GILBERTSON, Chief Justice, and KERN and JENSEN, Justices, and SEVERSON, Retired Justice, concur.