#29111, #29117-a-SRJ
**2021 S.D. 42**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

The People of the State of South Dakota
In the Interest of C.R.W., Child, and concerning
D.S. and J.R.W., Respondents,
OGLALA SIOUX TRIBE, Intervenor.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JEFFREY R. CONNOLLY
Judge

* * * *

DANA L. HANNA
Rapid City, South Dakota                    Attorney for intervenor and
                                            appellant, Oglala Sioux Tribe.


ILISJA DUFFY
Rapid City, South Dakota                    Attorney for respondent and
                                            appellant, D.S.



COURT W. ROPER
Special Assistant Attorney General
Pierre, South Dakota                        Attorneys for petitioner and
                                            appellee, State of South Dakota.



GARY D. JENSEN of
Beardsley, Jensen & Lee
Rapid City, South Dakota                    Attorneys for appellee, C.R.W.,
                                            Child.

* * * *

CONSIDERED ON BRIEFS
MARCH 22, 2021
OPINION FILED **07/21/21**

JENSEN, Chief Justice

[¶1.]        D.S. (Mother) and J.R.W. (Father) are the biological parents of C.R.W.,

who was the subject of an abuse and neglect proceeding before the circuit court.

The Oglala Sioux Tribe (the Tribe) intervened in the proceeding pursuant to the

Indian Child Welfare Act (ICWA).  The Tribe moved to disqualify C.R.W.'s attorney

alleging the attorney had a conflict of interest with C.R.W. because the attorney

was not advocating for C.R.W.'s expressed wishes.  During the termination

proceedings, Mother and Tribe moved to transfer the case to tribal court.  The

circuit court denied the motion to disqualify C.R.W.'s attorney and the motions to

transfer jurisdiction.  The court entered a final dispositional order terminating the

parental rights of both parents.  Mother and the Tribe appeal.  We affirm.

**Facts and Procedural History**

[¶2.]        In early 2018, C.R.W. lived with Father and her stepmother

(Stepmother) in Rapid City.  She was eleven years of age at the time.  Mother had

not been the active caregiver since 2009.  On January 11, Father was arrested for

violating a no contact order.  Around 3:00 a.m. that same night, C.R.W. called Rapid

City dispatch to report that Stepmother left her home alone with an unknown male

and she felt unsafe.  Law enforcement arrived at the house and questioned the man,

who was sleeping.  He identified himself as J.J.  J.J. told law enforcement that he

was not providing care for C.R.W. and did not know Stepmother left the house

without C.R.W.  C.R.W. informed law enforcement that J.J. entered the home

around 2:00 a.m. and Stepmother left around 2:30 a.m.  The responding officers

reported that the carpets were covered in garbage, dirty dishes were piled up in the

sink, food was spilled on the counters and stove, and the kitchen smelled like sour milk. C.R.W. believed that Stepmother and other unknown associates were smoking marijuana in the home prior to her leaving.

[¶3.]        C.R.W. was removed from the residence and taken to her maternal grandmother's (Grandmother) home. Grandmother reported several ongoing concerns related to C.R.W.'s truancy and living conditions. Grandmother reported that C.R.W. had head lice for months, yet it went untreated even though she provided Father with tips on how to treat lice. C.R.W. was placed in the Department of Social Services' (DSS) temporary custody because Father was incarcerated and Mother's whereabouts were unknown.

[¶4.]        A 48-hour hearing was held on January 16, 2018. Mother, Father, and C.R.W. were each appointed counsel. C.R.W. was eligible for enrollment in the Oglala Sioux Tribe by virtue of Father's enrolled status.[1] Thus, C.R.W. is considered an Indian child under ICWA, pursuant to 25 U.S.C. § 1903(4). The Tribe intervened in the proceedings. Following a March 2018 hearing, the circuit court entered a default adjudicatory order, after both parents failed to appear personally, determining C.R.W. to be abused and neglected. The attorneys for each parent were present at the hearing.

[¶5.]        Over the next several months, C.R.W. remained in foster care and the circuit court found at periodic review hearings that "returning custody of [C.R.W.] to the Respondent parents would likely result in serious emotional and/or physical damage to [C.R.W.]." Father had a history of domestic abuse and refused to

---

1.        Mother is non-Indian.

cooperate or maintain contact with DSS during the proceedings. Father also refused efforts by DSS to set up visitation for him with C.R.W. Mother had a history of instability and substance abuse. She had been in and out of C.R.W.'s life since birth. DSS's reports to the circuit court showed that Mother made no movement toward reunification during this time.

[¶6.] DSS filed a petition to terminate parental rights on October 4, 2018, and served the same on both parents. A final dispositional hearing was scheduled for December 3, 2018, but was later cancelled at DSS's request. A permanency hearing was held in January 2019. At the hearing, DSS again expressed its intention to request termination of parental rights and asked the court to set a final dispositional hearing within 30 days. C.R.W.'s attorney joined in this request expressing that termination of parental rights was in C.R.W.'s best interest. The attorneys for both parents objected to setting a final dispositional hearing.

[¶7.] The Tribe also objected to setting a final hearing and requested the circuit court to direct C.R.W.'s attorney to advise whether C.R.W. agreed with her attorney's request to terminate parental rights. C.R.W.'s attorney informed the court that C.R.W. "would like to go home to her parents" but "she understands her parents are not in a position right now to provide her with stability." C.R.W.'s attorney further informed the court of C.R.W.'s other placement preferences "if she can't go home to her parents." C.R.W.'s attorney relayed her belief that reunification was not in C.R.W.'s best interest and expressed that the court should terminate parental rights.

[¶8.] Based on these statements, the Tribe argued a conflict of interest existed between C.R.W. and her attorney, and that the attorney should be disqualified. The Tribe requested that a guardian ad litem (GAL) be appointed for C.R.W. and that a review hearing be set to address whether C.R.W.'s attorney had a conflict of interest. The circuit court denied the Tribe's request to appoint a GAL but set a review hearing for February 25, 2019, to consider the Tribe's motion to disqualify C.R.W.'s attorney.

[¶9.] On February 20, the Tribe filed a written motion to disqualify C.R.W.'s attorney. The Tribe claimed that C.R.W.'s attorney created a conflict of interest by recommending termination of parental rights to the court when C.R.W. desired to be reunited with her parents. The Tribe argued that the conflict of interest deprived C.R.W. of her due process and statutory right to counsel. The Tribe also argued that C.R.W.'s attorney had an ethical duty to advocate for C.R.W.'s wishes pursuant to Rule 1.2 of the South Dakota Rules of Professional Conduct.[2] The Tribe again requested that a GAL be appointed to represent C.R.W.'s best interests.

[¶10.] C.R.W.'s attorney filed a response arguing that the Tribe did not have standing to bring a motion to disqualify C.R.W.'s attorney, but even if the Tribe had standing, the statute authorizing the appointment of counsel for a child in abuse and neglect proceedings requires "[t]he attorney for the child [to] represent the

---

2.  Rule 1.2 provides in relevant part:

> a lawyer shall abide by a client's decisions concerning the
> objectives of representation and, as required by Rule 1.4, shall
> consult with the client as to the means by which they are to be
> pursued. A lawyer may take such action on behalf of the client
> as is impliedly authorized to carry out the representation.

child's best interests . . . ." SDCL 26-8A-18.[3] C.R.W.'s attorney also provided a

memorandum from the State Bar Ethics Committee addressing an attorney's

professional responsibility in representing children in abuse and neglect

proceedings. The Committee's memo provided that "SDCL 26-8A-18 requires a

lawyer to disregard client wishes when they conflict with the lawyer's assessment of

the best interests of the client."

[¶11.] At the February 25 review hearing, the circuit court ruled that the

Tribe had standing to raise the alleged conflict with C.R.W. and her attorney

because "any party has standing . . . to bring to the court's attention if they believe

there's an ethical violation or some reason where a party should be disqualified."

The court stated possible "friction" existed between the rules of professional conduct

and SDCL 26A-8-18 but did not attempt to resolve any conflict between them.

Instead, the circuit court found that the record failed to show that a conflict existed

between C.R.W. and her attorney requiring disqualification. The court denied the

motion to disqualify, as well as the request to appoint a GAL. However, the court

expressed that it would be open to hearing directly from C.R.W.

[¶12.] On February 26, 2019, DSS noticed a final dispositional hearing for

March 25, 2019, and filed a petition to terminate the parental rights of Father and

Mother. On March 22, 2019, the Tribe renewed its motion to disqualify C.R.W.'s

---

3.    SDCL 26-8A-18 provides in relevant part:

> the court shall appoint an attorney for any child alleged to be
> abused or neglected in any judicial proceeding. . . . The attorney
> for the child shall represent the child's best interests and may
> not be the attorney for any other party involved in the judicial
> proceedings.

attorney. The Tribe specifically requested the circuit court to address the obligations of C.R.W.'s attorney under SDCL 26-8A-18 and the Rules of Professional Responsibility.

[¶13.] During the termination hearing, C.R.W. appeared and was questioned by the court and counsel concerning her preferences and express wishes. C.R.W. relayed that she wanted Mother's and Father's parental rights to be terminated so that she could live in a forever home. C.R.W. also stated that she had initially wanted to return to her parents but changed her mind over time because of her parents' instability and inconsistency in visiting her. C.R.W. expressed that her first choice would be to live permanently with her brother's foster family, where she was staying at the time of the final dispositional hearing, or another home permanently. Based upon C.R.W.'s testimony, the court found that C.R.W. "wanted her parents' rights terminated and that she wanted to be adopted." The court orally denied the Tribe's second motion to disqualify C.R.W.'s attorney.

[¶14.] At the start of the final dispositional hearing on March 25, Mother orally moved to transfer the case to tribal court. Mother claimed that she had only recently learned about the possibility of transferring the case to tribal court from members of Father's family. Father and the Tribe did not take a position on the motion because neither attorney knew whether their clients wished to transfer the case.[4] The Tribe also informed the circuit court that the tribal court had not conditionally accepted jurisdiction of the case.

---

4. Father did not personally appear at the hearing.

[¶15.] DSS objected to Mother's transfer motion, arguing that good cause existed to deny transfer because the final dispositional hearing was at an advanced stage in the proceedings. C.R.W.'s attorney also objected to Mother's oral motion to transfer. C.R.W.'s attorney reiterated that C.R.W. specifically expressed her desire to move forward with the termination hearing so that she could be placed in a forever home. The court asked the Tribe if it had a position on whether good cause existed, to which the Tribe replied "[C.R.W.'s] desires and rights on this issue should be respected[.]"

[¶16.] The circuit court found that good cause existed to deny Mother's motion to transfer because the case was in the advanced stages of the proceeding. The circuit court also considered the fact that C.R.W. opposed transfer. Although Mother argued that she just recently found out about the ability to transfer the proceedings, the court found that Mother had been involved in every stage of the litigation, represented by counsel throughout the proceedings, and advised of her right to transfer at the 48-hour hearing in January 2018.

[¶17.] The termination hearing was not concluded on March 25 so the parties returned for a second day. At the start of the continued hearing on March 28, the Tribe, for the first time, made an oral motion to transfer to tribal court. The Tribe's counsel indicated that the tribal court had taken action to assume jurisdiction, but he did not yet have a copy of the order. Mother also orally renewed her motion to transfer. In making the transfer motion, the Tribe conceded that the case was in the advanced stages of the proceeding.

[¶18.]    Following a break during the hearing, the Tribe's attorney presented a tribal court order dated March 11 accepting jurisdiction of the case. The circuit court and the parties, including the Tribe's attorney, were not previously aware of the tribal court order. Mother argued that the court should reconsider the denial of the motion to transfer because she would have made the motion earlier had she known that the tribal court accepted jurisdiction of the case. The circuit court determined good cause existed to deny both the Tribe's motion and Mother's renewed motion on the same grounds upon which the court had denied the original transfer motion.

[¶19.]    Following the final dispositional hearing, the court issued a lengthy memorandum opinion confirming its oral rulings denying the Tribe's motion to disqualify C.R.W.'s attorney, as well as the motions to transfer jurisdiction to tribal court. The court then issued findings of fact and conclusions of law, and an order terminating Mother's and Father's parental rights.

[¶20.]    The Tribe raises a single issue on appeal of whether the circuit court erred when it denied the Tribe's motion to disqualify C.R.W.'s attorney. Mother appeals arguing that the circuit court abused its discretion when it denied her motion to transfer jurisdiction.

**Issues**

1.  ***Whether the circuit court erred when it denied the Tribe's motions to disqualify C.R.W.'s attorney.***

   a.   *Standing*

[¶21.]      DSS initially argues that the Tribe lacked standing to disqualify C.R.W.'s attorney before the circuit court, or to appeal the issue to this Court.[5] We disagree.  Under ICWA, an Indian tribe has an interest in an Indian child that is distinct from the parents' interest. *People ex rel. M.H.*, 2005 S.D. 4, ¶ 14, 691 N.W.2d 622, 627 (quoting *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 52, 109 S. Ct. 1597, 104 L. Ed. 2d 29 (1989)).  Additionally, ICWA was established to help preserve "the tribe's ability to assert its interest in its children." *Id.* (quoting *Holyfield*, 490 U.S. at 52) (emphasis omitted).  As such, a tribe may intervene as a party in any abuse and neglect proceeding involving an Indian child. We conclude that the Tribe's interest in protecting the welfare of Indian children and its status as a party under ICWA is sufficient to show injury for the purpose of standing to raise an alleged conflict between C.R.W. and her attorney.[6] *See Cable v. Union Cnty. Bd. of Cnty. Comm'rs*, 2009 S.D. 59, ¶ 22, 769 N.W.2d 817, 826.

[¶22.]      Moreover, the circuit court also properly recognized its inherent authority to ensure that counsel appearing and advocating before the court comply

---

5.      C.R.W. joined DSS's brief and did not file a separate brief.

6.      25 U.S.C. § 1914 authorizes the Tribe to petition a court to invalidate any action for termination of parental rights upon a showing that such action violated any provision of sections 1911, 1912, or 1913.  One such provision, section 1912(b), provides that the court may appoint counsel for the child if the court determines that appointment of counsel is in the child's best interests.

-9-

with the professional responsibilities of an attorney. Courts have recognized that judges have an obligation to address ethical issues involving potential conflicts of interest that may exist between a litigant and her attorney. *Ward v. Lange*, 1996 S.D. 113, ¶¶ 26-28, 553 N.W.2d 246, 253 (recognizing the circuit court's obligation to raise and prevent, even sua sponte, conflicts of interest arising when an attorney representing a client seeks to testify in the same proceeding). *See also*, *Wheat v. United States*, 486 U.S. 153, 161, 108 S. Ct. 1692, 1698, 100 L. Ed. 2d 140 (1988) (stating that courts have an independent duty to inquire into conflict of interests in a dual criminal case to ensure the defendant has adequate representation).

### b. Conflict of Interest

[¶23.] The Tribe argues that a conflict of interest existed between C.R.W. and her attorney when the attorney argued for what the attorney believed was in C.R.W.'s best interest rather than advocating for C.R.W.'s expressed wishes. In particular, the Tribe points to C.R.W.'s attorney joining in DSS's request to terminate parental rights, while indicating that C.R.W. still desired to be reunited with her parents. The Tribe argues that C.R.W.'s attorney violated Rule 1.2 by failing to comply with the directives of her client in advocating for C.R.W.

[¶24.] We review a circuit court's ruling on a motion to disqualify an attorney under an abuse of discretion standard. *Harter v. Plains Ins. Co.*, *Inc*, 1998 S.D. 59, ¶ 21, 579 N.W.2d 625, 631. In denying the motion to disqualify, the court concluded that the record did not demonstrate that a conflict of interest existed between C.R.W. and her attorney. Even if the views of C.R.W. and her attorney differed to some degree at the time of the January permanency hearing, the court found that

C.R.W. expressed a desire to terminate parental rights and be adopted at the final dispositional hearing in March. Further, the court determined that the attorney appropriately advocated for what she believed was in the best interest of C.R.W. as required by SDCL 26-8A-18 and that the "Tribe did not present any authority for the proposition that a Court should disqualify an attorney because another party believes the attorney is not properly abiding by their client's decisions."

[¶25.] The court also concluded that, contrary to the Tribe's assertions, C.R.W.'s attorney did not violate Rule 1.2 in her representation of C.R.W. The court noted that C.R.W.'s attorney had obtained an opinion from the South Dakota State Bar Ethics Committee that "recently made clear that Counsel has *not* violated ethical obligations to her client." Moreover, the court concluded that "little or nothing in the record supports the Tribe's interpretation that [C.R.W.] ever *directed* her attorney to argue against termination." The court's factual determinations that a conflict did not exist between C.R.W. and her attorney are supported by the record.

[¶26.] However, the Tribe argues that the circuit court erred as a matter of law by interpreting SDCL 26-8A-18 to permit an attorney, appointed to represent the child in an abuse and neglect proceeding, to argue the attorney's belief as to the child's best interest rather than for the express wishes of the child. The Tribe argues that SDCL 26-8A-18 requires an attorney to provide client-directed representation, and the attorney must abide by the child's direct wishes. The Tribe's argument centers around its reading of the word "attorney" and the ethical obligations upon an attorney in representing the client's interests under Rule 1.2.

[¶27.]	The Tribe's arguments present an issue of first impression in South Dakota– whether an attorney appointed to represent a child in an abuse and neglect proceeding under SDCL 26-8A-18 provides the child with client-directed representation or "best interest" representation, wherein the attorney advocates for the child's best interest. To answer this question, we turn to the relevant statutes and rules.

[¶28.]	Interpretation of a statute or court rule is reviewed de novo. *State v. Bryant*, 2020 S.D. 49, ¶ 20, 948 N.W.2d 333, 338 (citation omitted). "[T]he starting point when interpreting a statute must always be the language itself." *Id.* (quoting *State v. Livingood,* 2018 S.D. 83, ¶ 31, 921 N.W.2d 492, 499 (alteration in the original). "The purpose of statutory interpretation is to discover legislative intent." *Id.* (citation omitted). "[This Court] gives words their plain meaning and effect, and read statutes as a whole . . . ." *Expungement of Oliver*, 2012 S.D. 9, ¶ 6, 810 N.W.2d 350, 352 (citation omitted) (second alteration in the original).

[¶29.]	South Dakota law requires appointment of counsel for a child in an abuse and neglect proceeding:

> the court shall appoint an attorney for any child alleged to be abused or neglected in any judicial proceeding. The court shall appoint an attorney in the manner the county in which the action is being conducted has chosen to provide indigent counsel under § 23A-40-7. The attorney for the child shall represent the child's best interests and may not be the attorney for any other party involved in the judicial proceedings. The court may designate other persons, including a guardian ad litem or special advocate, who may or may not be attorneys licensed to practice law, to assist the attorney of the child in the performance of the attorney's duties. Compensation and expense allowances for the child's attorney shall be determined and paid according to § 26-7A-31.

SDCL 26-8A-18.

[¶30.] The plain language of SDCL 26-8A-18 provides: "The attorney for the child shall represent the child's *best* interests[.]" (emphasis added). This Court has made clear its rules on statutory construction:

> There are two primary rules of statutory construction. The first rule is that the language expressed in the statute is the paramount consideration. The second rule is that if the words and phrases in the statute have plain meaning and effect, we should simply declare their meaning and not resort to statutory construction.

*Abata v. Pennington Cnty. Bd. of Comm'rs*, 2019 S.D. 39, ¶ 18, 931 N.W.2d 714, 721 (citation omitted) (internal quotations omitted). Thus, an attorney appointed pursuant to SDCL 26-8A-18 must first and foremost advocate for the child's best interests.[7]

[¶31.] The Tribe argues that notwithstanding the "best interests" language in SDCL 26-8A-18, the ethical obligations of an attorney under the Rules of Professional Conduct require a lawyer to "abide by a client's decisions concerning the objectives of representation . . . ." SDCL 16-18 App., Rules of Prof. Conduct,

---

7. Other states have similar statutes governing representation of children. *See* WY ST 14-3-211 ("The attorney . . . shall be charged with representation of the child's best interest."); *See also In re K.H.*, 2012 M.T. 175, 285 P.3d 474 (holding that a child's attorney advocates for the child's best interest). This interpretation also is consistent with articles addressing the topic. *See* Kasey L. Wassenaar, *Defenseless Children: Achieving Competent Representation for Children in Abuse and Neglect Proceedings Through Statutory Reform in South Dakota*, 56 S.D. L. Rev. 182, 183 (2011) ("The attorney's role in a best interests capacity requires the attorney to step outside his or her traditional role and look at the situation from a bigger perspective to determine what is in the best interests of the child."); *See also* Noy Davis, Amy Harfeld, Elisa Weichel, *A Child's Right to Counsel* (4th Ed.), 2019, at 133, (Children in South Dakota receive "best interest representation").

Rule 1.2. *See also* SDCL 16-18 App., Rules of Prof. Conduct, Rule 1.4. The Tribe argues that a conflict of interest arises whenever the attorney's view of a child's best interests conflicts with the child's express wishes.

[¶32.] Ethical considerations can no doubt arise from "best interests" representation. *See* Wassenaar, 56 S.D. L. Rev. at 205. However, in addressing possible conflicts, several states have reconciled an attorney's separate obligations to protect a child's best interest and to advocate for a child's wishes by requiring the attorney to present both views to the court. *See Clark v. Alexander*, 953 P.2d 145, 153 (Wyo. 1998); *In re K.H.*, 2012 M.T. 175, 285 P.3d 474; *Interest of J.P.B.*, 419 N.W.2d 387 (Iowa 1988). These courts recognize the unique role of an attorney appointed to represent a child and how the relationship differs from the usual attorney-client relationship.

> [T]he very reason for contested custody proceedings is that the children involved are not yet mature enough to be self-determining. It is the best interests of these minor children, not their wishes, which determine the outcome of the case. In other words, their real interests are not inconsistent or mutually exclusive.

*J.P.B.*, 419 N.W.2d at 391.

[¶33.] The Supreme Court of Montana explained its views (albeit in a child custody dispute) this way:

> We recognize that in Montana the attorney for the child is not a guardian ad litem. Nevertheless his role in a custody dispute is to advocate the child's best interest, not the child's wishes. This is a difficult role, particularly when the child's expressed wishes conflict with the attorney's determination of his best interests. But, given the immaturity of the client and the pressures that often exist in a divorce situation, it is this Court's opinion that the best interests of the child, the paramount concern in all custody disputes, is best served by modifying that traditional lawyer-client relationship.

> . . .
> This Court is aware that determining a child's best interests is difficult and is concerned about the child's right to an advocate. We reiterate our position that a child's wishes deserve serious consideration[.] . . . If the court-appointed attorney concludes that the child's expressed wishes are not in his best interest the attorney must disclose this to the court. The district court must be clearly informed of the child's wishes and the basis for the attorney's determination that it is not in the child's best interest to live with the preferred parent.

*In re Marriage of Rolfe*, 216 M.T. 39, 52-53, 699 P.2d 79, 86-87 (internal citations omitted). The Montana Supreme Court later applied the same analysis to abuse and neglect proceedings. *See In re K.H.*, 2012 M.T. 175, 285 P.3d 474.

[¶34.] We adopt this approach as it relates to a child's attorney appointed in abuse and neglect proceedings pursuant to SDCL 26-8A-18. The child's attorney appointed pursuant to the statute is required to advocate for the child's best interest. However, when the attorney's determination of what constitutes the child's best interest conflicts with the child's expressed wishes, the ethical obligations of the attorney require consultation with the child to insure that the child's objectives are presented to the court, along with the basis for the attorney's determination of the child's best interest. This approach "gives priority to the paramount goal of discerning the child's best interest while enabling the lawyer to advocate an opposing viewpoint without fear of ethical violation." *J.P.B.*, 419 N.W.2d at 392.[8]

---

8. The Tribe contends that this reading of SDCL 26-8A-18 violates the child's due process rights. The Tribe argues that excusing any duty on the part of an attorney to advocate for a child's requests and preferences violates the "opportunity to be heard at a meaningful time and in a meaningful manner" under the Due Process Clause. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.

(continued . . .)

[¶35.] The Tribe also argues that when the best interest recommendations of the child's attorney conflict with the child's express wishes, a GAL must be appointed to represent the child's best interest so the attorney can advocate as directed by the child.[9] SDCL 26-8A-20. The Tribe claims that interpreting statutes to require best interest representation by an attorney creates a redundancy in the duties of a GAL, resulting in an absurd or unreasonable interpretation of SDCL 26-8A-18. *See Argus Leader Media v. Hogstad*, 2017 S.D. 57, ¶ 9, 902 N.W.2d 778, 782.

[¶36.] We have recognized that an ambiguity "may exist where the literal meaning of a statute leads to an absurd or unreasonable conclusion." *People ex rel. J.L.*, 2011 S.D. 36, ¶ 4, 800 N.W.2d 720, 722. However, we can discern no reason to consider this exceptional canon of construction here. There is nothing absurd or ambiguous about the Legislature's requirement that both the attorney and GAL, appointed for a child in an abuse and neglect proceeding, are obligated to advocate for the child's best interest. The GAL serves to assist the attorney in representing the best interest of the child. *See* SDCL 26-8A-20. While the duties of the attorney and the GAL may occasionally overlap, these court-appointed representatives serve

_____

(. . . continued)

Ct. 893, 902, 47 L. Ed. 2d 18 (1976) (citation omitted) (internal quotations omitted). However, this argument is undeveloped beyond the Tribe's bare assertion and is unsupported by authority. The Tribe's constitutional claim also fails to account for the fact that our standard requires the child's attorney to present the child's wishes to the circuit court.

9. On appeal, the Tribe does not challenge the circuit court's denial of the Tribe's request to appoint a GAL for C.R.W. The record shows that the circuit court appointed a CASA special advocate to represent the best interests of the child, in addition to appointing counsel.

an integral role in providing a voice for the child and advocating for the child's best interest.

### c. Supremacy Clause

[¶37.] The Tribe also contends that ICWA preempts SDCL 26-8A-18 to the extent that the statute requires an attorney to advocate for a child's best interest rather than a child's wishes. In part, the Tribe points to the Code of Federal Regulations, which requires every party to be heard regarding foster care placement, pre-adoptive placement, adoptive placement, and transfer hearings regarding the proceeding. *See* 25 C.F.R. § 23.118(b); *See* 25 C.F.R. § 23.132(c)(2).

[¶38.] "There is a strong presumption against federal preemption." *In re Estate of Flaws*, 2016 S.D. 61, ¶ 17, 885 N.W.2d 580, 584 (citation omitted). "Federal preemption 'occurs when Congress . . . expresses a clear intent to pre-empt state law, . . . where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, . . . or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.'" *Id.* ¶ 18, 885 N.W.2d at 584 (quoting *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 368–69, 106 S. Ct. 1890, 1898, 90 L. Ed. 2d 369 (1986)) (alterations in original).

[¶39.] "[ICWA] contains nothing at all by way of an express preemption provision." *In re Brandon M.*, 54 Cal. App. 4th 1387, 1396, 63 Cal. Rptr. 2d 671 (1997). Further, ICWA does not comprehensively occupy the field of child custody or adoption of Indian children. "In rare cases, the Court has found that Congress 'legislated so comprehensively' in a particular field that it 'left no room for

supplementary state legislation[.]'" *Kansas v. Garcia*, 140 S. Ct. 791, 804, 206 L. Ed. 2d 146 (2020) (quoting *R. J. Reynolds Tobacco Co. v. Durham County*, 479 U.S. 130, 140, 107 S. Ct. 499, 93 L. Ed. 2d 449 (1986)). However, "ICWA is totally devoid of any provisions dealing with, e.g., the bases on which a child may be removed from a parent's custody, when and how often hearings must be held to review a child's status, who is entitled to what reunification services and for how long, or many, many other similar issues." *In re Brandon*, 54 Cal. App. 4th at 1396. Additionally, 25 U.S.C. § 1902 provides that ICWA was implemented based on a national policy of promoting "the stability and security of Indian tribes and families by the establishment of *minimum Federal standards* for the removal of Indian children from their families . . . ." (emphasis added).

[¶40.] The Tribe has failed to show how SDCL 26-8A-18 conflicts with any provision of ICWA. Under federal law, a court has discretion to appoint an attorney for an Indian child in an abuse and neglect proceeding. 25 U.S.C. § 1912(b). South Dakota law requires a circuit court to appoint an attorney for any child alleged to be abused and neglected. *See* SDCL 26-8A-18. Thus, South Dakota law grants Indian children a higher standard of protection than federal law by requiring a child be appointed counsel in abuse and neglect proceedings, in turn directly promoting Congress's purpose and objectives under ICWA. *See* 25 U.S.C. § 1902.

[¶41.] In the end, we conclude the circuit court did not err in its legal conclusion that SDCL 26-8A-18 required the child's attorney to represent the child's best interests, nor did the circuit court abuse its discretion in denying the motion to disqualify C.R.W.'s attorney.

### 2. *Whether the circuit court abused its discretion in denying Mother's motions to transfer jurisdiction.*

[¶42.] A circuit court's "[d]enial of a motion to transfer jurisdiction under [ICWA] is reviewed under the abuse of discretion standard." *People in interest of A.O.*, 2017 S.D. 30, ¶ 8, 896 N.W.2d 652, 654 (citation omitted). "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices . . . .'" *Id.* (citations omitted) (alteration in original). A circuit court's factual findings are reviewed for clear error. *Id.* (citation omitted). A finding is clearly erroneous if this Court is "left with the definite and firm conviction" that a mistake has been made. *Id.* (citation omitted).

[¶43.] Pursuant to ICWA, "state courts and tribal courts share concurrent jurisdiction over abuse and neglect cases involving Indian children who are not domiciled on reservations or wards of a tribal court." *People in Interest of E.T.*, 2019 S.D. 23, ¶ 11, 932 N.W.2d 770, 773 (citations omitted). "However, this shared jurisdiction is presumptively tribal[,]" and "state courts must transfer, upon motion, foster-care-placement and termination-of-parental-rights proceedings to tribal court jurisdiction unless 1) either parent objects; 2) the tribal court declines jurisdiction; or 3) good cause to the contrary exists." *Id.* (citation omitted). "If a party objects to the transfer on the grounds that good cause to the contrary exists, all parties must be given the 'opportunity to provide the court with views regarding whether good cause to deny transfer exists.'" *Id.* ¶ 12, 932 N.W.2d at 773 (quoting 25 C.F.R. § 23.118).

[¶44.] Mother argues that the circuit court erred when it did not conduct a separate evidentiary hearing on her motion to transfer. She believes this deprived

her of an adequate opportunity to be heard. Mother relies on *People in Interest of M.C.*, 504 N.W.2d 598, 601 (S.D. 1993) (holding that a child opposing a motion to transfer jurisdiction to tribal court was entitled to an evidentiary hearing to establish good cause to deny the transfer of jurisdiction to the tribe) and *People in Interest of A.O.*, 2017 S.D. 30, 896 N.W.2d 652 (holding that the circuit court abused its discretion in determining good cause existed to deny a transfer motion based on the fact that the case had been pending for more than a year without first holding an evidentiary hearing). We have also stated that "circuit courts need the benefit of a sufficiently developed record to assist in the good cause determination." *E.T.*, 2019 S.D. 23, ¶ 16, 932 N.W.2d at 774.

[¶45.]     The circuit court satisfied these requirements for a hearing on the question of good cause and made specific findings based upon a well-developed record. The circuit court considered evidence from the record and C.R.W.'s statements when making its ruling on the motion to transfer. The circuit court also afforded all the parties an opportunity to be heard on both motions to transfer jurisdiction to tribal court. Finally, unlike the cases cited above, no party sought to present additional evidence or to be heard further on the question of whether good cause existed to deny transfer. Mother's claim of procedural error by the circuit court fails.

[¶46.]     Mother next argues that the circuit court erred in determining that good cause existed to deny the motion to transfer. Good cause to deny a motion to transfer may exist if the proceeding is at an advanced stage. *A.O.*, 2017 S.D. 30, ¶

10, 896 N.W.2d at 655. The circuit court must determine on a case-by-case basis whether the proceeding is at an advanced stage. *Id.* (citation omitted).

[¶47.] The guidelines to 25 C.F.R. § 23.118 state that "The final rule also clarifies that 'advanced stage' refers to the proceeding, rather than the case as a whole. Each individual proceeding will culminate in an order, so 'advanced stage' is a measurement of the stage within each proceeding." This guidance is also consistent with 25 C.F.R. § 23.115(b) which provides that "[t]he right to request a transfer is available at any stage in each foster-care or termination-of-parental-rights proceeding." Therefore, we must determine whether the circuit court properly determined that Mother's motion to transfer was made at an advanced stage of the termination proceedings.

[¶48.] In its findings on the transfer motion, the circuit court stated:

> The termination proceeding was at an advanced stage when the Respondent mother moved to transfer at the start of the termination hearing. The matter had been pending for fifteen months at the time the Respondent mother requested that the case be transferred. The Department had filed the Petition for Termination of Parental Rights almost six months earlier, on October 4, 2018. The Final Dispositional Hearing was canceled shortly thereafter. However, the intent to renew the termination proceedings was identified in Court on January 23, 2019; the Respondent mother was present. The Final Dispositional Hearing was reset for March 25, 2019 and a second notice of intent to terminate was filed on February 27, 2019. The Respondent mother, as well as the Tribe and all parties, received notice of the matter long before it became an advanced proceeding. Between February 27, 2019 and March 25, 2019, the Respondent mother did not file, serve, or give any indication that she intended to seek transfer of the case to the Oglala Sioux Tribe. The Respondent mother had been represented by counsel throughout these proceedings and has attended numerous hearings. The Respondent mother appeared and was represented by counsel at the [48] Hour Hearing on January 16, 2018 and she was advised on her right to transfer at

-21-

that time. The Respondent mother knew of these proceedings since their inception and she knew she had the right to move for transfer at any time. Advanced stage of the termination of parental rights proceedings represents good cause not to transfer the proceeding upon the Respondent mother's eleventh-hour motion.

The second reason for good cause to deny the Respondent mother's motion to transfer is based on the minor child's objection to transfer. The minor child was present at the Final Dispositional Hearing on March 25, 2019 and objected to the transfer. In this case, the wishes of the twelve-year-old child are compelling. The objection of the child constitutes good cause to deny transfer.

[¶49.] The court's findings that the termination proceeding had reached an advanced stage are supported by the record. Mother failed to give any indication that she intended to seek transfer of the case until she orally moved to transfer the case at the start of the termination hearing on March 25. Yet, DSS initially filed a petition for termination in October, requested a final disposition hearing in January, and filed a second petition for termination in February. Mother's claim that she was unaware she could seek transfer to tribal court until one week before the final dispositional hearing cannot be countenanced when she was advised of her right to seek transfer at the 48-hour hearing one year earlier.

[¶50.] Additionally, the circuit court properly considered C.R.W.'s objections in determining that good cause existed to deny transfer of jurisdiction to tribal court. Mother argues, however, that the circuit court erroneously relied on the statement of C.R.W.'s attorney that "[C.R.W.] would like to be placed in a forever home." She cites the Bureau of Indian Affairs regulations, which proscribe certain factors from being considered, including "whether transfer could affect the placement of the child[.]" 25 C.F.R. § 23.118(c)(3).

[¶51.]     Although C.R.W. expressed a placement preference, the record does not show that this placement was an option for C.R.W., or that her preferred placement would be impacted by the motion to transfer jurisdiction to tribal court. Further, C.R.W.'s desire for a permanent home was made in the context of wanting a final resolution of the proceedings that had already been pending for more than a year.  Finally, the circuit court stated in its memorandum opinion that it did not consider whether transfer would impact the placement of C.R.W. in its good cause determination.

[¶52.]     Based on the foregoing, the circuit court did not abuse its discretion when it denied Mother's motions to transfer.

[¶53.]     We affirm.

[¶54.]     SALTER, DEVANEY, and MYREN, Justices, concur.

[¶55.]     KERN, Justice, deeming herself disqualified, did not participate.